**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
_____x

Aleksandar Zunzurovski,

                          Plaintiffs

-against-

Liane Fisher,
Michael J. Taubenfeld,
Fisher Taubenfeld, LLP,
John and Jane Doe 1-10, and
ABC Corp. 1-10.

                          Defendants
_____x

| |
|---|
| Case Number 23-10881 |
| COMPLAINT |

Plaintiff Aleksandar Zunzurovski ("Plaintiff Zunzurovski" or "Mr. Zunzurovski"), individually by and through his attorney, Tyrone Blackburn Esq, upon their knowledge and belief, and as against Liane Fisher ("Fisher"); Michael J. Taubenfeld ("Taubenfeld"); Fisher Taubenfeld, LLP ("FT Law") (collectively, "The Collective") alleges as follows:

## JURISDICTION AND VENUE

1. This Court has personal jurisdiction over Defendants under and consistent with the Constitutional requirements of Due Process in that Defendants, acting directly or through their agents or apparent agents, committed one or more of the following:

    a. The transaction of any business within the state;

    b. The making of any contract within the state;

    c. The commission of a tortious act within this district and

    d. The ownership, use, or possession of any real estate in this state.

2. The Court has supplemental jurisdiction over the Plaintiffs' related claims under state and local law under 28 USC § 1367(a).

3. The plaintiffs have complete diversity from all of the Defendants as the following is true:

    a. The Plaintiff is a resident of New Jersey.

    b. The individual Defendants reside in New York State.

    c. Defendant Corporation is incorporated in the State of New York. Their office is 225 Broadway, Suite 1700, New York, NY 10007.

1

4. Damages far exceed the $75,000.00 threshold for diversity jurisdiction.

<u>**PARTIES**</u>

*Plaintiff* Aleksandar Zunzurovski

5. Plaintiff Zunzurovski is a personal trainer, coach, nightclub host, manager, and entrepreneur. Plaintiff Zunzurovski is an Macedonian, Serbian, German, and English-speaking Caucasian male who resides in New Jersey.

*Defendant* Fisher



**Laine Fisher, Esq**.

6. Defendant Fisher is an Attorney with the Law Firm Fisher Taubenfeld, LLP. Fishers NYS Bar Registration number is as follows:

| Attorney Detail Report *as of 12/13/2023* | |
|---|---|
| **Registration Number:** | 4397980 |
| **Name:** | LIANE FISHER |
| **Business Name:** | FISHER TAUBENFELD LLP |
| **Business Address:** | 225 Broadway Ste 1700<br>New York, NY 10007-3755<br>(New York County) |
| **Business Phone:** | (212) 571-0700 |
| **Email:** | LIANE@FISHERTAUBENFELD.COM |
| **Date Admitted:** | 03/20/2006 |
| **Appellate Division Department of Admission:** | 1st |
| **Law School:** | BROOKLYN LAW SCHOOL |
| **Registration Status:** | Attorney - Due to Register within 30 Days of Birthday |
| **Next Registration:** | Jan 2024 |

7. On or about 2016, Fisher was retained by Plaintiff to represent him in his NYLL employment dispute against his former employer, Jacaranda Club, LLC D/B/A Sapphire New York ("Sapphire").

*Defendant* Taubenfeld



**Michael J. Taubenfeld, Esq**.

8. Defendant Taubenfeld is an Attorney with the Law Firm Fisher Taubenfeld, LLP. Taubenfelds NYS Bar Registration number is as follows:

| Attorney Detail Report *as of 12/13/2023* | |
|---|---|
| Registration Number: | 4649463 |
| Name: | MICHAEL JOEL TAUBENFELD |
| Business Name: | FISHER TAUBENFELD LLP |
| Business Address: | 225 BROADWAY STE 1700 NEW YORK, NY 10007-3755 (New York County) |
| Business Phone: | (212) 571-0700 ext. 102 |
| Email: | michael@fishertaubenfeld.com |
| Date Admitted: | 11/24/2008 |
| Appellate Division Department of Admission: | 1st |
| Law School: | CARDOZO SCHOOL OF LAW |
| Registration Status: | Attorney - Currently Registered |
| Next Registration: | Oct 2024 |

9. On or about 2016, Taubenfeld was retained by Plaintiff to represent him in his NYLL employment dispute against his former employer, Jacaranda Club, LLC D/B/A Sapphire New York ("Sapphire").

*Defendant* Fisher Taubenfeld, LLP



FISHER | TAUBENFELD LLP
NEW YORK EMPLOYMENT LAW ATTORNEYS

10. Defendant Fisher Taubenfeld, LLP is a general practice law firm in New York City. It was founded by individual Defendants Fisher and Taubenfeld.

## NATURE OF ACTION AND FACTUAL ALLEGATIONS

11. This is an action for monetary and declaratory relief to redress the Defendants' violation of the Plaintiffs' rights. The Plaintiff seeks relief for negligent malpractice, and breach of contract.

## DEFENDANT REPRESENTATION OF THE PLAINTIFF

12. On or about December 2016, Defendants filed a lawsuit on the Plaintiff's behalf against Sapphire ("Sapphire lawsuit") and David Michael Talla for violating the FLSA, the NYLL (§ 650 *et seq.*), and the New York Commissioner of Labor's Wage Order (the "Wage Orders,") codified at 12 N.Y.C.R.R. 146 *et seq*.

13. Plaintiffs' Sapphire lawsuit was based upon the following acts and/or omissions which the Sapphire Lawsuit Defendants committed:

   I.   Failure to compensate Plaintiff for all hours worked at the statutory minimum wage as required by federal and state law and regulations;

   II.  Failure to provide Plaintiff with spread-of-hours payments under 12 NYCRR 146-1.6 and 137-1.7;

   III. Defendant's failure to provide Plaintiff with proper paystubs as required by NYLL § 195; and

   IV.  Defendants' unlawful retention of tips and service fees under NYLL § 196-d.

14. The Sapphire lawsuit was brought before Arbitrator Martin Scheinman.

15. At the end of the Sapphire's lawsuit, Plaintiff was awarded $2,118,483.64 minus the $1,375,000.00 that was awarded to two Sapphire employees, Maria Vasquez ("Vasquez") and Natalia Titova ("Titova"). Vasquez and Titova sued the Sapphire Defendants for workplace harassment.

16. On or about April 5, 2019, Vasquez, a former dancer and employee of Sapphire, sat for a deposition ("Vasquez Depo") in a lawsuit she filed against Sapphire, James Mark Talla, Jeffrey Wasserman, and Glen Peter Bernardi. This matter was held before Arbitrator Martin F. Scheinman.

17. During the Vasquez Depo, Plaintiff and eight other employees were referred to as "Hosts" who allegedly sexually harassed and or assaulted Vasquez.

18. On or about April 12, 2019, Titova, a former dancer and employee of Sapphire, sat for a deposition ("Titova Depo") in a lawsuit she filed against Sapphire, James Mark Talla, Jeffrey Wasserman, and Glen Peter Bernardi. This matter was held before Arbitrator Martin F. Scheinman.

19. During the Titova Depo, Plaintiff and eight other employees were named as "Hosts" who allegedly sexually harassed and or assaulted Titova.

20. At the end of the Vasquez and Titova arbitrations, they were awarded $1,375,000.00.

21. Unlike the Plaintiff's counsel, the Defendants' counsel was competent during the Sapphire lawsuit. They filed a cross-complaint for contribution against Plaintiff for $1,375,000.00.

22. Defendants Fisher and Taubenfeld failed to file a third-party complaint for contribution against the eight hosts that were named in the deposition for Vasquez and Titova.

23. Instead of filing a third-party complaint for contribution, the woefully incompetent Defendants Fisher and Taubenfeld filed several nonsensical motions for reconsideration and an Article 75 proceeding challenging the arbitrator's award. *See* **Exhibit A**.

24. As a direct result of Defendants Fisher and Taubenfeld failure to file a third-party complaint for contribution against the eight hosts, Plaintiff may now be precluded from pursuing the eight host for contribution.

## <u>RES JUDICATA MAY PREVENT THE PLAINTIFF FROM PURSUING<br>THE EIGHT HOSTS FOR CONTRIBUTION</u>

25. The Plaintiff's claims may be precluded under the claim and issue preclusion doctrines. See Thompson v. Cnty. of Franklin, 15 F.3d 245, 253 (2d Cir. 1994) ("Res judicata challenges may properly be raised via a motion to dismiss for failure to state a claim under Rule 12(b)(6)."); Vassel v. Greystone Bank, No. 12-CV-5704, 2013 WL 2395980, at *6 (E.D.N.Y. May 31, 2013) ("In addition, a party may seek dismissal of a claim under Federal Rule of Civil Procedure 12(b)(6) based

on the doctrines of collateral estoppel/issue preclusion and res judicata/claim preclusion."). "[T]he doctrines of res judicata, collateral estoppel and issue preclusion apply to arbitration awards." Matter of Hynes v Worthy, 2002 NY Slip Op 50459(U), at *3 (Sup Ct October 16, 2002), affd, 6 AD3d 1136 (4th Dept 2004). "These principles prevent a party from relitigating in a subsequent action or proceeding an issue of fact or law clearly raised in an earlier arbitration and decided against that party." Id. (internal citations omitted). "It matters not that the arbitrator's award was never confirmed." Id.

**Claim Preclusion May bar the Plaintiff's Claims Against the eight Hosts.**

26. The doctrine of *res judicata,* or claim preclusion, holds that a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action. *Brown Media Corp. v. K&L Gates, LLP*, 854 F.3d 150, 157 (2d Cir. 2017).

27. Under New York law, a Defendant invoking claim preclusion must show that "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the same adverse parties or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been raised, in the prior action." *Marcel Fashions Grp., Inc. v. Lucky Brand Dungarees, Inc.*, 779 F.3d 102, 108 (2d Cir. 2015) (alterations and citation omitted).

28. A claim was or could have been raised in a prior action if the claim "aris[es] out of the same transaction or series of transactions" involved in the prior action. *Hameed v. Aldana*, 296 F. App'x 154, 155 (2d Cir. 2008) (quoting *O'Brien v. City of Syracuse*, 54 N.Y.2d 353, 357 (1981)); *see also Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) (explaining that New York's approach provides that a later claim could have been raised in a prior action if it "aris[es] out of the same factual grouping as [the] earlier litigated claim even if the later claim is based on different legal theories or seeks dissimilar or additional relief").

29. Plaintiff's claims against the eight Hosts may be barred by claim preclusion.

30. First, it is undeniable that the arbitration award in the Sapphire case constitutes an adjudication on the merits of whether the Plaintiff should be solely held responsible for the claims raised by Titova and Vasquez.

31. Indeed, Arbitrator Scheinman clearly and unequivocally held that Plaintiff must be required to indemnify Sapphire for the claims raised by Titova and Vasquez. *See* **Exhibit B** at 59-62.

32. Second, it is undeniable that Plaintiff was involved in the arbitration proceeding as a claimant. *See generally* **Exhibit B**.

33. Moreover, while the eight Hosts were not parties in the arbitration proceeding, they were in privity with Sapphire, which Defendants Fisher and Taubenfeld should have recognized. If Defendants Fisher and Taubenfeld were remotely competent, they would have filed a third-party claim in the arbitration proceeding.

> "In its modern form, the principle of privity bars relitigation of the same cause of action against a new Defendant known by a plaintiff at the time of the first suit where the new Defendant has a sufficiently close relationship to the original Defendant to justify preclusion." *Central Hudson Gas & Electric Corp. v. Empresa Naviera Santa S.A.*, 56 F.3d 359, 367–68 (2d Cir.1995). The Second Circuit has repeatedly held that employees are in privity with their employers. *See, e.g.*, *Malcolm v Bd. of Educ. of Honeoye Falls-Lima Cent. School Dist.*, 506 Fed Appx 65 (2d Cir 2012) ("[a]lthough this action adds Defendants who were not part of the prior actions, because all of the Defendants named in this action are either current or former agents or employees of the school district, the principle of privity bars relitigation of these claims against these new Defendants as well"); *John St. Leasehold, LLC v. Cap. Mgmt. Res., L.P.,* 283 F.3d 73, 75 (2d Cir. 2002) (FDIC employees were in privity with employer FDIC for purposes of res judicata).

34. Here, the eight Hosts are in privity with Sapphire because they are or were employees with Sapphire at all times relevant to the claims for contribution that should have been filed by individual Defendants Fisher and Taubenfeld.

35. Third, the arguments for the contribution that individual Defendants Fisher and Taubenfeld failed to raise in a third-party complaint against the eight Hosts were erroneously raised as justification for reconsideration instead of raising it in a third-party complaint for contribution or indemnification in the arbitration. Specifically, individual Defendants Fisher and Taubenfeld argued that "other individuals," including sexually harassed Titova and Vasquez, and thus Plaintiff, should not have been held solely responsible for sexual harassment-based damages paid to the entertainers. *See* **Exhibit C** at 43-44; **Exhibit D** at 3-4.

36. Individual Defendants Fisher and Taubenfeld also could have argued in a third-party complaint in the Sapphire arbitration that the eight Hosts should have been held responsible in addition to and/or instead of Plaintiff.

37. Moreover, Plaintiff's claims for contribution arise from the same set of facts as the arbitration, namely his conduct (and the alleged conduct of the eight Hosts) vis-à-vis Titova and Vasquez. The

Plaintiff cannot simply repackage his already litigated claims under a theory of unjust enrichment. *See Harriott v Nationstar Mtge. LLC*, 17CV4748MKBVMS, 2018 WL 4853045, at *8 (EDNY September 28, 2018) ("Plaintiffs may not simply repackage their already litigated claims as TILA claims."); *Green v. Kadilac Mortgage Bankers, Ltd*., 936 F. Supp. 108, 114 (S.D.N.Y. 1996) (finding the Plaintiff could not relitigate issues already decided in a foreclosure action by recasting his assertions as a section 1983 claim).

38. Accordingly, Plaintiff's claims for contribution against the eight Hosts may be barred under the doctrine of claim preclusion.

### *Plaintiffs' Claims Against the eight Hosts May Be Barred By Issue Preclusion*

39. "Issue preclusion, or collateral estoppel,... applies not to claims or to causes of action as a whole but rather to issues. " *Proctor v. LeClaire*, 715 F.3d 401, 414 (2d Cir. 2013). "Under New York law, [issue preclusion] bars claims where (1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding." *Abdelal v. Kelly*, 726 F. App'x 8, 11 (2d Cir. 2018) (quoting *Colon v. Coughlin*, 58 F.3d 865, 869 (2d Cir. 1995)).

40. As a direct result of individual Defendants Fisher and Taubenfeld's gross incompetence, issue preclusion may bar Plaintiff's claims against the eight Hosts.

41. The issue of contribution, namely whether other Sapphire employees (the eight hosts) were responsible for damages paid to Titova and Vasquez or if Plaintiff should be solely held liable for these damages, was conclusively decided by Arbitrator Scheinman in the arbitration.

42. Indeed, Arbitrator Scheinman rejected this argument by holding that under the principle of common law indemnification, Plaintiff was wholly liable for the sexual harassment portion of the settlement payment made to the two entertainers. *See* Exhibit A at 21, 59-62. Given that "in indemnity, the party held legally liable shifts the entire loss to another," *Rosado v. Proctor & Schwartz, Inc*., 66 N.Y.2d 21, 24, 494 N.Y.S.2d 851, 484 N.E.2d 1354 (1985).

43. It was individual Defendants Fisher and Taubenfeld's responsibility to file a third-party complaint against the eight Hosts for contribution **<u>BEFORE</u>** the arbitrator Scheinman's decision, which required Plaintiff to solely indemnify Sapphire for the claims raised by Titova and Vasquez.

44. Due to individual Defendants Fisher and Taubenfeld's gross incompetence, Plaintiff lost the opportunity to seek contribution or indemnification from the eight Hosts named by Titova and Vasquez.

45. There is no doubt that Plaintiff had a full and fair opportunity to litigate the issue for contribution against the eight Hosts if Defendants Fisher and Taubenfeld had timely filed the third-party complaint.

***Fishers Ethically Flawed and Self-Serving Desire to Engage In A Romantic Relationship With Attorney Jeffrey Brown, Counsel For Titova and Vasquez Harmed Plaintiff***

46. Plaintiff begged individual Defendants Fisher and Taubenfeld to file suit against the eight Hosts. Fisher was too busy engaging in an illicit romantic relationship with the attorney for Titova and Vasquez, Jeffrey Brown, and failed to heed the requests of Plaintiff and to exercise her due diligence to protect Plaintiff's interests.



**Jeffrey Brown, Esq. Attorney for Titova and Vasquez**

47. On or about 2016, before retaining Defendants Fisher and Taubenfeld to represent him in his lawsuit against Sapphire, Plaintiff spoke with Attorney Jeffrey Brown.

48. Plaintiff was in the process of being retained by Attorney Jeffrey Brown when Defendants Fisher and Taubenfeld convinced Plaintiff to retain them instead.

49. Titova and Vasquez later retained Jeffrey Brown.

50. After being blindsided by Sapphire's counsels filing a cross-complaint for indemnification against Plaintiff for the claims raised by Titova and Vasquez, Plaintiff then learned that Fisher, WITHOUT Plaintiff's consent, had disclosed attorney-client privileged facts concerning Plaintiff's case to Attorney Jeffrey Brown.

51. Plaintiff learned of Fisher's unethical and self-serving act when he visited Fisher in her office, and she offered Plaintiff a drink of whiskey.   After Plaintiff finished the drink, Fisher said, "you won't believe who gave me that Whiskey." Plaintiff replied, "who?" and Fisher said, "Jeff, we are going on dates" [referring to attorney Jeffrey Brown].

52. Fisher then asked Plaintiff not to mention anything to her partner Taubenfeld because he would "kill her" if he knew.

53. Evidence of Fisher's **<u>VIOLATION</u>** of the Plaintiffs attorney-client privilege came in the form of a text message from Fisher to Plaintiff that states:

    a.  "I talked to Jeff Brown today. He said there were a few girls who believe you were set up. He is going to try to sign them up as clients, and then he will try to help us out." *See* **Exhibit E**.

54. The Plaintiff's issue with this text is that Jeff Brown appeared to know confidential aspects of Plaintiffs case that could have only come from Ms. Fisher.

55. Ultimately, Jeff Brown's "clients," the dancers he represented, settled with the club for the unreasonable amount of money that Plaintiff was later held responsible for.


### *Defendants Fisher and Taubenfeld Defrauded Plaintiff Out of Hundreds Of Thousands Of Dollars In Violation Of Their Retainer Agreement*

56. According to the retainer agreement prepared by Defendants Fisher and Taubenfeld signed by Plaintiff, Defendants Fisher and Taubenfeld would receive 33.3% (1/3) of the aggregate award Plaintiff received.

57. The agreement was based on a contingency fee arrangement, implying that the Plaintiff's case was highly likely to succeed.

58. The Plaintiff detrimentally relied on this agreement as a document outlining his understanding of the case's strength.

59. The agreement was the document upon which Plaintiff relied for his case and how he approached the valuation and negotiations.

60. Throughout the Plaintiff's case, Defendants Fisher and Taubenfeld never mentioned any alternative methods of payment beyond the initial retainer agreement.

61. If Defendants Fisher and Taubenfeld had informed Mr. Zunzurovski that they could be paid in any other way, he would have considered that information when assessing his case and questioned if

Defendants Fisher and Taubenfeld would have conflicting interests in resolving Mr. Zunzurovski's case.

62. This would have influenced Mr. Zunzurovski's evaluation and his best interest in the case, as Mr. Zunzurovski would have been negotiating against the club and the Defendants Fisher and Taubenfeld. This means Defendants Fisher and Taubenfeld's fee payments would not be contingent on resolving the case in Mr. Zunzurovski's best interest but rather based on what would be most advantageous for themselves.

63. During their representation of Mr. Zunzurovski, Fisher informed Mr. Zunzurovski that he was offered a settlement amount of $ 1,000,000, which she promptly dismissed.

64. During a meeting with Ms. Fisher, Jeff Brown called in and conveyed the same message to Ms. Fisher that they could settle the case right away.

65. Ms. Fisher also dismissed this. Mr. Zunzurovski also found it strange that during the arbitration hearings, Defendants Fisher and Taubenfeld consistently emphasized that the arbitrator disliked Mr. Zunzurovski and would not rule in a manner that granted Mr. Zunzurovski the rightful legal entitlement.

66. Defendants Fisher and Taubenfeld repeatedly said the arbitrator would not provide an award that would harm the club or the attorneys. His obligation was to protect the arbitrator's interests and those of the attorney parties involved.

67. Considering all of this information and the retainer agreement, Mr. Zunzurovski was still convinced. He valued his case with the understanding that Defendants Fisher and Taubenfelds must prioritize Mr. Zunzurovski's best interests, and their ultimate earnings depended on the total amount of Mr. Zunzurovski's award, thus motivating them to strive for the highest possible compensation.

68. Throughout the case, Mr. Zunzurovski carefully weighed the pros and cons in consultation with Defendants Fisher and Taubenfelds.

69. If Mr. Zunzurovski had been informed that Defendants Fisher and Taubenfelds had the potential to be compensated through an alternative means, Mr. Zunzurovski would have readily accepted the $1,000,000 settlement, understanding that he would be negotiating against Defendants Fisher and Taubenfelds as well.

70. It is now much more apparent to Mr. Zunzurovski why Fisher repeatedly expressed concerns such as "Michael will kill me if he finds out" when she was sleeping with Jeff Brown or had conversations with him.

71. Furthermore, The Defendants Fisher and Taubenfeld neglected to represent Mr. Zunzurovski or provide any guidance once they became aware of the entertainers' case against Sapphire and, more significantly, when they discovered that the dancers and the club had reached a substantial settlement, resulting in Mr. Zunzurovski's indemnification for those damages.

72. The Defendants Fisher and Taubenfelds consistently assured Mr. Zunzurovski that he would not be held responsible for the settlement amount or those damages and that Mr. Zunzurovski's potential liability would be limited to a maximum of $80,000.

73. Defendants Fisher and Taubenfelds never objected to the settlement between the dancers and the club in the arbitration hearings. They never filed for contribution or indemnification from the eight Hosts named by Titova and Vasquez. This again highlights a clear instance where Defendants Fisher and Taubenfelds failed to act in Mr. Zunzurovski's best interest, as they knew they did not need to rely solely on the retainer agreement they signed with Mr. Zunzurovski.

74. Lastly, despite the retainer agreement, Defendants Fisher and Taubenfelds received more of the settlement than Mr. Zunzurovski did. Approximately $700,000.00 vs. the $300,000.00 Plaintiff received.

75. Defendants Fisher and Taubenfelds were paid immediately after the conclusion of the arbitration, whereas Mr. Zunzurovski did not receive his payment until approximately 18 months later.

76. When Mr. Zunzurovski was informed of the award and arbitration ruling, he questioned the Defendant's Fisher and Taubenfelds about how this could happen without any prior discussion, especially after being told that his liability would be $80,000 at most.

77. Fisher reacted by screaming at Mr. Zunzurovski and threatening to withdraw from the case. She abruptly ended the conversation, and Mr. Zunzurovski had not heard from her since.


## FIRST CAUSE OF ACTION
## LEGAL MALPRACTICE

78. Plaintiff repeat and reallege all paragraphs above as though fully set forth herein.

79. Plaintiff retained Defendants to represent him in connection with the Sapphire lawsuit as detailed above.

80. During that time, Defendants undertook to represent Plaintiff as his counsel and agreed to provide Plaintiff with complete and accurate advice on relevant legal matters in a proper, skillful and diligent manner, in exchange for payment.

81. Defendants, as attorneys to Plaintiff, owed Plaintiff a duty of care in advising and counseling Plaintiff on all matters related to and arising out of the engagement.

82. Defendants' self-described expertise in the area of labor law, and litigation is precisely the reason why Plaintiff retained Defendants from in or around December 2016 to approximately 2022 and paid them contingency fees for the legal services they rendered.

83. On Defendants website, Fisher touts herself as having:

> "*helped achieve many notable litigation successes in state and federal court and before city, state and federal administrative agencies*."

84. On Defendants website, Taubenfeld touts himself as having:

> "*represented hundreds of employees on an individual and class-wide basis in bringing claims for unpaid minimum wages, unpaid overtime, unpaid prevailing and union wages and benefits, unlawful deductions, tip-skimming, retaliatory termination, unlawful collection of franchise fees under the New York State Franchise Act, forced kickbacks under the Racketeer Influenced and Corrupt Organizations Act (RICO) and breach of contract.*"

85. Plaintiff detrimentally relied on the states detailed in the preceding two paragraphs when he decided to hire Fisher and Taubenfeld to represent him in the Sapphire Lawsuit.

86. In accordance with their agreement with Plaintiff, Defendants provided legal counsel with respect to all issues relating to the assessment, determination, and demand for payment of his wages, tips and commissions against the Defendants on the Sapphire Lawsuit.

87. Defendants' legal representation included advising Plaintiff regarding his rights and obligations under NYLL, FLSA, and general litigation, including but not limited to, the cost plaintiff would e forced to pay the Sapphire Lawsuit Defendants for contribution and or indemnification.

88. Defendants were negligent in failing to advise Plaintiffs of his rights and obligations in obtaining contribution or indemnification from the eight Hosts who were named by Titova and Vasquez in their depositions as contributing to the harm they suffered during their employment at Sapphire.

89. Defendants failed to properly protect Plaintiff's legal rights in accordance with applicable laws, statutes and rules, and the duties and obligations of legal counsel to its clients, which were paying them substantial sums for quality legal advice.

90. Defendants' legal representation was negligent, inaccurate, incomplete and inadequate, and did not comport with the standard of care expected of lawyers in their field of expertise.

91. Indeed, a lawyer exercising ordinary prudence would have advised Plaintiff, at minimum, of his right to file a third-party complaint against the eight Hosts for contribution or indemnification for the cost that the Sapphire Defendants incurred by having to pay Titova and Vasquez for the harm they allegedly suffered.

92. Defendants should have filed a third-party complaint against the eight Hosts.  It is important to note, Plaintiff **ASKED THEM TO DO SO**.  Even if they did not want to take advise for their client (Plaintiff) all they had to do was copy, paste, and edit the cross complaint the Sapphire Defendants filed against Plaintiff.  It is mindboggling how two attorneys that tout themselves as being litigation savants could miss that layup.

93. Defendants' failures were a departure from the standard of care possessed by members of the legal community practicing as civil litigators.

94. Defendants breached their professional duties to Plaintiff by:

   a. Failing to disclose their romantic relationship (Defendant Fisher) with Jeffrey Brown who was counsel for Titova and Vasquez. Fisher knew that Plaintiff consulted with Jeffrey Brown prior to Plaintiff retaining Defendants as counsel, yet she failed to notify Plaintiff of her romantic relationship with Jeffrey Brown. Fisher did not provide Plaintiff with a conflict waiver, and intentionally waited until the arbitrator awarded the Sapphire Lawsuit Defendants 1.3 million dollars for contribution before disclosing to Plaintiff that she was in a romantic relationship with Jeffrey Brown.

   b. Failing to file a third-party complaint against the eight Hosts (Desmond C. Finger, Michael Wright, Nick Valentine, Maria Katz, John Loukas, Jimmy Kim, Michael Mueller, and Mike Dobronski) who were named by Titova and Vasquez in their depositions as contributing to the harm they suffered during their employment at Sapphire. As a result of Defendants negligence, Plaintiff may now be prohibited from filing suit against the eight Hosts for contribution due to the doctrines of claim and issue preclusion as detailed above.

   c. Failing to turn over all of plaintiff's files and records after Plaintiff requested them for over a year[1].

---

[1] "Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as . . . **surrendering papers and property to which the client is entitled**.")… such a failure **may give rise to a claim for malpractice, or negligence**, see Tuccio v. Garamella, 2008 Conn. Super. LEXIS 2999, at *14-*17

14



**Conversation Between Plaintiff and Taubenfeld**

d.  Unjustly enriching themselves nearly $700,000.00 while plaintiff received approximately $300,000.  This was a clear violation of their retainer agreement.

---

(Conn. Super. Ct. Nov. 18, 2008); Coffey v. United States, 906 F. Supp. 2d 1114, 1175-76 (D.N.M. 2012). In re Coudert Bros. LLP, No. 06-12226 (RDD), 2013 Bankr. LEXIS 3360, at *25 (Bankr. S.D.N.Y. Aug. 19, 2013).

95. If Defendants had performed adequately and had exercised the skill and knowledge commonly possessed by a member of the legal profession in the State of New York, Plaintiffs would have paid approximately ninety (90%) percent less than the amount Plaintiffs paid in contribution/indemnification in the Sapphire lawsuit.

96. As a direct result of the foregoing acts and omissions, Plaintiff has been damaged and has suffered and will continue to suffer monetarily.

97. By reason of the foregoing, Plaintiffs are entitled to compensatory damages and punitive damages in an amount to be determined at trial, but not less than $1,700,000.00.

**WHEREFORE**, Plaintiffs respectfully demand judgment against Defendants jointly for actual damages in an amount to be determined at trial, but not less than $1,700,000, together with costs, disbursements, attorneys' fees, such other and further relief as the Court may deem appropriate.

## SECOND CAUSE OF ACTION
### BREACH OF CONTRACT

98. Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

99. Plaintiff entered into a contingency fee contract with Defendants Fisher and Taubenfeld for legal services.  Plaintiff agreed to pay Defendants Fisher and Taubenfeld 33/3% or 1/3 of the aggregate amount of the award he secured as a result of their representation of him.

100.   Plaintiff performed his duties in the contract when he was attentive, corporative, honest and transparent with Defendants Fisher and Taubenfeld as they worked to prosecute Plaintiffs case against Plaintiff's former employer.    Plaintiff also overcompensated Defendants Fisher and Taubenfeld for the work they performed on Plaintiffs behalf in the contract.

101.   Defendants Fisher and Taubenfeld breached the terms of the retainer agreement when they pocked 2/3rds ($700,000) of the aggregate award Plaintiff received and paid Plaintiff a little more than $300,000.

102.   As a direct result of Defendants Fisher and Taubenfelds deceptive thievery, Plaintiff overpaid[2] Defendants Fisher and Taubenfeld by $350,000.

---

[2] See Marte v. Graber, 31 Misc. 3d 70, 924 N.Y.S.2d 720, 721-22 (App. Term 2011) (holding that a suit for refund of alleged overpayment of fees for legal services sounded in breach of contract).

103.   Defendants Fisher and Taubenfeld breached the contingency provision of the retainer agreement when they pocked 66.6% or 2/3rds of the aggregate amount of the award Plaintiff received as a result of their representation of Plaintiff.  This was a direct violation of the terms detailed in the retainer agreement which states in relevant part,

> "We have agreed to represent you on a contingency basis, wherein our firm will recover in attorneys' fees one-third of any amount obtained on your behalf (whether through compromise, settlement, or other means) including any amount already offered to you. You are responsible for all expenses, including but not limited to expert fees, travel, meals, local and long-distance telephone charges, electronic research charges (such as Lexis and Westlaw), copying, facsimiles, delivery service, and outside investigation services.1 The Firm may advance expenses on your behalf, but you must reimburse the Firm for such advances upon the Firm's presentation of invoices. ***The Firm's contingency percentage is computed on the net sum recovered after deducting all expenses and disbursements***."

*See* **Exhibit F**

104.   As a direct result of the foregoing acts and omissions, Plaintiff has been damaged and has suffered and will continue to suffer monetarily.

105.   By reason of the foregoing, Plaintiffs are entitled to compensatory damages and punitive damages in an amount to be determined at trial, but not less than $1,700,000.00.

**WHEREFORE**, Plaintiffs respectfully demand judgment against Defendants jointly for actual damages in an amount to be determined at trial, but not less than $1,700,000, together with costs, disbursements, attorneys' fees, such other and further relief as the Court may deem appropriate.


## PRAYER FOR RELIEF

WHEREFORE, the plaintiffs respectfully request that this Court enter judgment against Defendants by:

a.   For past, present, and future general damages in an amount to be determined at trial;

b.   For past, present, and future special damages, including but not limited to past, present, and future lost earnings, economic damages, and others, in an amount to be determined at trial;

c.   Any appropriate statutory damages;

d.   For costs of suit;

e.   For interest as allowed by law;

f.   Referral to the New York State Bar Office Of Attorney Ethics,

g.   For attorney's fees and

h.   All such other and further relief as the Court deems and proper.

## **JURY DEMAND**

Plaintiffs and all similarly situated employees demand a jury trial on all issues triable by a jury.

Dated: December 14, 2023
Brooklyn, New York

*Tyrone A. Blackburn, Esq.*
Tyrone A. Blackburn, Esq.
1242 E. 80th Street, 3rd Floor
Brooklyn, NY 11236
Phone: 347-342-7432
Email: Tblackburn@tablackburnlaw.com

**PRESERVATION NOTICE**

The term "you," "your," or "yours" as used herein shall refer to you (the recipient of this letter), as well as to the Defendant's Fisher and Taubenfelds and any individuals responsible for the custody and control of the below information, including, but not limited to, those individuals' administrative assistants, secretaries, agents, employees, information technology personnel and third-party vendors. From this point forward, you are directed to prevent "spoliation," defined as altering, changing, updating, destroying (even if periodically), editing, or deleting any information set forth hereafter.

If you cause any such alteration, destruction, or change, direct it, or allow it to occur, you may be charged with discovery rule violations for which sanctions may be imposed. Further, your failure to abide by this request could result in severe penalties against you and form the basis of legal claims for spoliation.

Electronically Stored Information:

In terms of electronically stored information, you are directed to prevent any destructive, alternative or other change to any web pages, virtual profiles or identical (including, but not limited to, Facebook, Instagram, Pinterest, Twitter, Tumblr, LinkedIn, Snapchat, Google Plus+, Flickr, Vine, About.me, ask.fm etc., or any other social media-based web profile or networking site account), emails, voice messages, text messages, instant messages or messaging systems, recordings, digital recordings, media images and videos, temporary memory, memory sticks, portable memory devices, laptops or computers, CDs, DVDs, USB devices, databases, computer activity logs, internet browsing history (including cookies), network access and server activity logs, word processing files and file fragments, backup and archival files, imaging and facsimile files, electronic calendar and scheduling program files and file fragments as well as any other contact and relationship management data (e.g., Outlook), electronic spreadsheet files and file fragments, pertaining in any way to this controversy of the parties or any potential witnesses.  This includes a request that such information not be modified, altered, or deleted due to data compression or disk fragmentation (or other optimization procedures), which processes you are hereby directed to suspend until that data can be preserved, copied, and produced.

You are directed not to modify, alter, or delete or allow modifications, alterations, or deletions to be made to any electronically stored information. You are further directed to preserve all, and not to destroy any, passwords, decryption productions (including, if necessary, the software to decrypt the files), network access codes, manuals, tutorials, written instructions, decompression or reconstruction software, and any other information and things necessary to access, view and (if necessary) reconstruct the electronic data we will request through discovery.

Paper Information:

In terms of the paper information, you are directed to preserve any emails, videos, texts, memos, reports, documents, notes, correspondence, photographs, investigative information, or other documents pertaining to the controversy, parties, or witnesses in this matter. Through discovery, we expect to obtain several documents and other data from you, including text messages, emails, photographs, and other information stored on computers, electronic devices, and telephones.

Although we may bring a motion with a court for order-preserving documents and other data from destruction or alteration, your obligation to preserve documents and other data for discovery, in this case, arises independently from any order on such motion. Electronic documents and the storage media, including but not limited to telephones on which they reside, contain relevant, discoverable information beyond what may be found in printed documents. Therefore, even where a paper copy exists, we will likely seek all documents in their original, electronic form, along with metadata or information about those documents on the media. We will seek paper printouts of only those documents that contain unique information created after they were printed (e.g., paper documents containing handwriting, signatures, marginalia, drawings, annotations, highlighting, and redactions) and any paper documents for which no corresponding electronic files exist.

The laws and rules prohibiting the destruction of evidence apply to electronically stored information in the same manner they apply to other evidence. Due to its format, electronic information is quickly deleted, modified, or corrupted. Accordingly, the demand is made that you take every reasonable step to preserve this information until the final resolution of this matter. This

may include, but would not be limited to, an obligation to discontinue all data destruction and backup tape recycling policies.

Concerning electronic data created after this Complaint's delivery date, relevant evidence should not be destroyed. You must take the steps necessary to avoid the destruction of such evidence.

Dated: December 14, 2023
Brooklyn, New York

*Tyrone A. Blackburn, Esq.*
Tyrone A. Blackburn, Esq.
1242 E. 80th Street, 3rd Floor
Brooklyn, NY 11236
Phone: 347-342-7432
Email: Tblackburn@tablackburnlaw.com


## **DEMAND FOR INSURANCE COVERAGE**

Defendants are demanded to provide a complete copy of their applicable insurance policies and declaration sheets demonstrating coverage within thirty (30) days of service of this Complaint.

Dated: December 14, 2023
Brooklyn, New York

*Tyrone A. Blackburn, Esq.*
Tyrone A. Blackburn, Esq.
1242 E. 80th Street, 3rd Floor
Brooklyn, NY 11236
Phone: 347-342-7432
Email: Tblackburn@tablackburnlaw.com