

# T. A. Blackburn Law

TYRONE A. BLACKBURN

MEMBER OF
NY & NJ BAR

FEDERAL MEMBERSHIP
EDNY, NDNY, SDNY, ILND & DNJ

1242 East 80th Street, 3rd Floor
Brooklyn, New York 11236

March 19, 2024

United States District Judge Denise L. Cote
Southern District Of New York
500 Pearl Street, Courtroom 18B
New York, New York 10007

**Re: <u>Zunzurovski v. Fisher et al.; 1:23-cv-10881-DLC</u>**

Dear Judge Cote,

I respectfully submit this letter concerning the order the Court issued on March 5, 2024, after the initial pretrial conference. Your Honor issued an order requiring filing an affidavit by Plaintiff regarding his representation that this writer that Fisher is domiciled in New York and a letter from this writer regarding this writer's compliance with the requirements of Rule 11 in five unrelated cases that were not before this Court.

**<u>Plaintiff Zunzurovski's Affidavit</u>**:
I am writing to submit the attached affidavit prepared by Plaintiff Zunzurovski in response to the Court's request during the March 5, 2024, hearing. The affidavit addresses Plaintiff Zunzurovski's relationship with Defendant Fisher and provides details regarding his belief in Ms. Fisher's domicile at the time of filing. Additionally, the affidavit includes Plaintiff Zunzurovski's response to claims made by Defendants' counsel during the March 5th hearing regarding his relationship with Ms. Fisher.

**<u>Counsels Answer to the Courts Request for Explanation</u>**:
I am writing to explain the jurisdictional dismissals for the cases requested by the Court during the March 5, 2024, hearing. In each case, after careful review and consideration, it was determined that the Court did not have proper jurisdiction to hear the matters presented or that another venue would be more fitting. As a result, the cases were dismissed.

I understand the Court's interest in ensuring compliance with Rule 11 and confirming the basis for jurisdiction in the cases before it. While the jurisdictional dismissals in the unrelated cases may raise questions, I assure the Court that the matters before this Court were thoroughly vetted. I genuinely believe that all requirements, including jurisdictional considerations, have been met.
:




347-342-7432    tblackburn@tablackburnlaw.com    TABlackburnlaw.com

1



# T. A. Blackburn Law

**1:19-cv-11573-AKH** Jones v. Fox Rothschild LLP et al: The decision to transfer the case to New Jersey was based on the belief that the majority of the claims arose out of Defendants Fox's New Jersey office, as the company and individual Defendant were domiciled there. While there were viable New York state causes of action, the Court deemed that the case would be better suited in New Jersey due to these factors.

Defendant Fox's state of domicile is actually in Pennsylvania, not New Jersey. Additionally, Defendant Fox has a New York office where Plaintiff was allegedly sexually assaulted and harassed. I apologize for any confusion this may have caused.
Despite these discrepancies, the Court decided to transfer the case to New Jersey, and I was not sanctioned for improper venue. I assure you that all decisions were made in accordance with the information available at the time.

**1:20-cv-02598-JPC-KNF** Weingarten v. CBS et al: I filed a motion for Pro Hac for a Pennsylvania attorney, Robert T. Vance Jr. I did not draft the complaint, I did not sign the complaint, I did not sign the motion papers, I was not involved at all in any aspect of this litigation aside from filing a Pro Hac application for Mr. Vance Jr. Apparently, the parties settled out of Court before the issue regarding jurisdiction was decided. I have no idea what the case settled for, and I was never compensated for this case.

**1:23-cv-03389-JMF:** In response to the Court's order to plead additional facts to determine the domicile of all parties mentioned in the complaint, Plaintiffs' counsel diligently utilized resources such as Lexis Nexis and a process server's skip trace location service to ascertain the defendants' domicile. Despite these efforts, the Court expressed dissatisfaction with the information provided and subsequently dismissed the case without prejudice for lack of subject matter jurisdiction.

**1:23-cv-03919-PKC:** von der Schmidt et al. v. Higgins et al.: The Court questioned the Plaintiff's Domicile, as the plaintiffs filed a lawsuit in this Court (1:22-cv-08198-KPF) asserting that they were domiciled in this District. When the 1:22-cv-08198-KPF lawsuit was filed, the Plaintiffs lived on the west side of Manhattan for over ten years. The Plaintiff moved several months later due to their fear of being harassed and stalked by the defendants in that case.

When the Plaintiffs filed 1:23-cv-03919-PKC, they had permanently moved from New York City to New Jersey. They, through the Defendants, had sent people to kill them, so they packed up and moved permanently to California. Judge Castel requested that the Plaintiffs provide the date of the change of their domicile, income tax returns, state voter registration, automobile registration, and driver's license. Plaintiffs could not provide any of the requested documents in the timeframe allotted by the Court. The plaintiffs had not filed any taxes in over a year due to fear of having their location discovered by the defendants. They did not register to vote, and they did not register a vehicle in their names. Judge Castel dismissed the case without prejudice for lack of subject matter jurisdiction.





Before the Court's decision, this writer submitted a notice of withdrawal as counsel for plaintiffs due to a breakdown in communication. The Plaintiff was acting erratic and believed that the defendants were trying to kill him and that the Defendants were attempting to break into his home. When the Plaintiffs moved to California, they refused to register to vote or switch their driver's licenses. They would only talk to this writer via various burner phones and encrypted emails. Plaintiff von der Schmidt suffers from several medical conditions (which I can share with the Court on camera) that resulted in my need to sever the attorney-client relationship.

Plaintiff von der Schmidt was fully diverse from the defendants in this case. Still, due to his illness, he was paranoid and incapable of providing the Court with the necessary documents in the appropriate amount of time.

**1:23-cv-04211-JPC:** My client informed me that Defendant Harron resided in New Jersey at 35 Journal Square, Jersey City, NJ 07306. This information was corroborated by a skip trace search conducted by my process serving company, which confirmed that this was indeed her address at the time. Furthermore, before filing the lawsuit, I had several phone conversations with Ms. Harron, during which she indicated that she lived in New Jersey. Additionally, there were Instagram posts from Ms. Harron identifying the New Jersey apartment as her home, although these posts have since been deleted. Another post identified a location in Miami, Florida, as her vacation home.

Moreover, my client confirmed Ms. Harron's New Jersey address as her domicile and said she visited her there. Some of my client's modeling colleagues also confirmed Ms. Harron's residency in New Jersey. Ms. Harron was served with the lawsuit at two locations: her office and what we believed to be her domicile. Furthermore, Mr. Harron was emailed a notice of the lawsuit and an FRCP Rule 4 waiver form, to which she did not respond. Subsequently, we had to file a motion for default, which Ms. Harron was served with at the same location as the original complaint. Only after the default was entered did she finally appear in the lawsuit.

That was the first time the issue of her domicile was raised. I spoke with her counsel, who provided evidence of her living in New York City. I accepted what he shared at face value and withdrew the case. A week later, the case was settled.

Out of all the cases, Your Honor requested an explanation for, **1:23-cv-04211-JPC** was the only one in which I erred regarding the individual Defendants' domicile. That case was not before this Court and was resolved by Judge Cronan.

**Rule 11(b)(3) Sanctions**:
Notwithstanding the dismissal of the underlying action, a court "retains the authority to decide collateral issues such as the appropriateness of sanctions." *ED Capital, LLC v. Bloomfield Inv, Res. Corp.*, 316 F.R.D. 77, 80-81 (S.D.N.Y. 2016).



Federal Rule of Civil Procedure 11 provides that "[b]y presenting to the court a pleading, written motion, or other paper" an "attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," the "legal contentions are warranted by existing law" and the "factual contentions have evidentiary support." Fed. R. Civ. P. 11(b) & (b)(2)-(3). Rule 11(c) authorizes a court, "on its own," to order "an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated Rule 11(b)." Fed. R. Civ. P. 11(c)(3). In determining whether to impose sanctions sua sponte, the Court does not ask whether an attorney acted in an objectively reasonable manner, i.e., as "any competent attorney would have done." *See Muhammad v. Walmart Stores East, L.P.*, 732 F.3d 104, 108-09 (2d Cir. 2013). Instead, the Court may issue sanctions sua sponte under Rule 11 "only upon a finding of subjective bad faith." *Id.* at 108. One district court has described subjective bad faith as "deliberate dishonesty" or a "willful intent to deceive," *Centauri Shipping Ltd. v. Western Bulk Carriers KS*, 528 F. Supp. 2d 197, 201 (S.D.N.Y. 2007), while another has defined it as "deliberate fraud or wrongdoing," *Cardona v. Mohabir*, No. 14-CV-1596 PKC, 2014 U.S. Dist. LEXIS 62637, 2014 WL 1804793, at *3 (S.D.N.Y. May 6, 2014) (quoting *SEC v. Smith*, 798 F. Supp. 2d 412, 424 (N.D.N.Y. 2011), *aff'd in part, dismissed in part*, 710 F.3d 87 (2d Cir. 2013)). *Errant Gene Therapeutics, LLC v. Sloan-Kettering Inst. for Cancer Research*, No. 15-CV-2044 (AJN), 2018 U.S. Dist. LEXIS 58489, at *4-5 (S.D.N.Y. April 4, 2018).

As in *Errant*, the evidence does not support a conclusion that I acted with subjective bad faith in stating that the parties in this action were diverse. As with the counsel in *Errant*, my records and research also indicated that Fisher was a New York resident.
As the Court in *Errant* held regarding *Errant's* counsel, I, too, was honestly mistaken about Fisher's residency, not "deliberate[ly] dishonest []" about it. *Centauri Shipping Ltd.*, 528 F. Supp. 2d at 201. As was the case in *Errant*, soon after learning that diversity was lacking, I filed a motion to dismiss the action.

> "Whether Errant Gene's seeming failure to conduct an initial investigation into diversity jurisdiction constitutes subjective bad faith is a harder question. On the one hand, Errant Gene's counsel have not provided any description of the initial investigation into diversity jurisdiction that they took before filing the complaint in this action, and they have not alleged that they were unaware such an investigation was necessary."

Here, unlike the counsel in Errant, I did perform an investigation into the citizenship of Fisher prior to filing, and I provided the Court with the steps that I took to complete that assessment.

> "On the other hand, counsel have not admitted that they filed the complaint knowing that they had failed to satisfy their duty. *Cf. Cardona*, 2014 U.S. Dist. LEXIS 62637, 2014 WL 1804793, at *4 (explaining that the attorney there had intentionally removed the case to what he knew was the wrong District)."



Here, I did not only rely on the states of my client; I did my due diligence and discovered Fisher's address was New York.  Hindsight is 20/20, and apparently, my research was incorrect, but it was not intentional and it was not due to a lack of trying.

> "Ultimately, although the evidence shows that counsel was aware of their duty to ascertain the citizenship of Errant Gene at the time this action was commenced and that they failed to satisfy it, the evidence does not show that counsel were aware that they had failed to satisfy their duty.  Without that knowledge, the Court cannot conclude that Errant Gene or its counsel acted in bad faith.  Accordingly, the Court does not impose sanctions against Errant Gene or its counsel" *Errant Gene Therapeutics, LLC v. Sloan-Kettering Inst*. for Cancer Research, No. 15-CV-2044 (AJN), 2018 U.S. Dist. LEXIS 58489, at *5-8 (S.D.N.Y. April 4, 2018).

Here, I was aware of my duty to ensure the complete diversity of all parties to an action if I filed pursuant to diversity jurisdiction.  I did what I believed was my due diligence to ensure that I was correct, but I was wrong.

**Sanctions are not warranted here**:
As outlined above, the issues surrounding the cases are distinct.  None of the cases were filed in this District in bad faith, and none of the Courts or Judges who oversaw those cases felt that this writer was acting in bad faith.

Rule 11 sanctions are strong medicine and are inappropriate when a milder remedy will suffice. See Shepherd v. Am.  Broad.  Cos., 62 F.3d 1469, 1478-79, 314 U.S. App. D.C. 137 (D.C. Cir. 1995) (noting that the Circuit Courts generally agree that sanctions should not be imposed lightly). *Seldon v. Bernstein*, 2010 U.S. Dist. LEXIS 96989, at *5 (S.D.N.Y. Sep. 16, 2010).

I filed this case after conducting research and conferring with my client concerning the Defendant's diversity.  I did not file this case in bad faith.  My client and I gained nothing by filing it in Federal court over filing it in State court.  The defendants do not have a coherent defense for their actions, and that fact remains the same no matter where the case is filed.

Your Honor has held that a court has inherent power "to supervise and control its own proceedings and to sanction counsel or a litigant for bad faith conduct." *Sussman v. Bank of Israel,* 56 F.3d 450, 459 (2d Cir. 1995) (citing *Chambers v. Nasco, Inc.,* 501 U.S. 32, 43-50, 115 L. Ed. 2d 27, 111 S. Ct. 2123 (1990)).  *See also U.S. v. Int'l Brotherhood of Teamsters,* 948 F.2d 1338, 1345 (2d Cir. 1991), *cert. denied,* U.S. Such power allows the Court discretion in choosing an appropriate sanction, ranging from counsel fees (whether imposed on counsel or his or her client) to outright dismissal for failure to prosecute.  *See Chambers,* 501 U.S. at 43-45; *Teamsters,* 948 F.2d at 1345. *Banjo v. United States*, 95 CIV.  633 (DLC), 1996 U.S. Dist. LEXIS 10743, at *15-17 (S.D.N.Y. July 29, 1996).





Nevertheless, bad faith conduct that can be adequately sanctioned under the Federal Rules does not usually warrant resort to the Court's inherent power. *Chambers,* 501 U.S. at 50.  Furthermore, sanctions pursuant to the Court's inherent power are inappropriate unless the challenged conduct is: "(1) entirely without color and (2) motivated by improper purposes such as harassment or delay." *Milltex Indus. Corp. v. Jacquard Lace Co. LTD.,* 55 F.3d 34, 38 (2d Cir. 1995) (internal quotation marks and citation omitted). *Banjo v. United States*, 95 CIV. 633 (DLC), 1996 U.S. Dist. LEXIS 10743, at *15-17 (S.D.N.Y. July 29, 1996).

Your Honor also held that the Court must be mindful of the litigant's or counsel's due process rights, and "due process concerns posed by an outright dismissal are plainly greater than those presented by assessing counsel fees against lawyers." *See Roadway Express, Inc. v. Piper,* 447 U.S. 752, 767 & n.14, 65 L. Ed. 2d 488, 100 S. Ct. 2455 (1980).  Finally, a court's factual findings of bad faith must entail "a high degree specificity." *Id.* (internal quotation marks omitted).  *Banjo v. United States*, 95 CIV. 633 (DLC), 1996 U.S. Dist. LEXIS 10743, at *15-17 (S.D.N.Y. July 29, 1996).

The Second Circuit Court of Appeals held that "the power of the court under Rule 11 to issue sanctions *sua sponte* without affording the offender the opportunity to withdraw the challenged document . . . is akin to the court's inherent power of contempt." *Id.* Thus, much like contempt orders, *sua sponte* sanctions imposed without permitting the offender the opportunity to withdraw the problematic filing should issue **only upon a finding of subjective bad faith**. Id. (citing *In re Pennie & Edmonds LLP*, 323 F.3d 86, 91 (2d Cir. 2003)). *Revellino & Byczek, LLP v. Port Auth.*, 682 F. App'x 73, 75 (2d Cir. 2017).

Here, this case was not filed in Bad Faith.  Even though defendant Fisher has not provided any evidence establishing that she is domiciled in New Jersey, this writer took her word for it and immediately withdrew the action prior to the Defendants filing an answer or a motion in this case.  Secondly, as evidenced by Plaintiff's Declaration and the questionable unethical actions Defendant Fisher engaged in as counsel to Plaintiff, it is fair for this writer and Plaintiff to question the trustworthiness of her assertion that she is domiciled in New Jersey.  She lied about her kids playing on the same sports team as the Plaintiff's kids.  She lied about traveling to New York with Plaintiff for Arbitration.  She pocketed 2/3rds of the Plaintiff's settlement award in violation of her retainer agreement.

An unintentional error, absent the existence of bad faith[1] does not warrant the imposition of sanctions.  The Court is particularly unwilling to infer bad faith from meritless jurisdictional

---

[1] [B]ad faith may be inferred 'only if actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay.'" Schlaifer Nance & Co. v. Estate of Warhol, 194 F.3d 323, 336 (2d Cir. 1999).  Defendants have not cited a single example of a court in the Second Circuit actually inferring bad faith solely from a lack of merit, demonstrating that a court should do so only in exceptional circumstances.  See, e.g., Enmon v. Prospect Capital Corp., 675 F.3d 138, 143 (2d Cir. 2012) (finding bad faith based on a failure to disclose important information to the Court); In re 60 E. 80th St. Equities, Inc., 218 F.3d 109, 116 (2d Cir. 2000) (finding bad faith because Plaintiff made "numerous attempts to impugn the integrity of a federal judge and fellow attorney through totally unsubstantiated abusive and slanderous statements"); Offor v. Mercy Med. Ctr., 15-





T. A. Blackburn Law

allegations. A Court should exercise an abundance of caution before inferring bad faith from an improper assertion of personal jurisdiction because the "jurisprudence of personal jurisdiction . . . is an occasionally confusing and complex area of the law." Bellistri v. United States, No. 94-cv-3768 (KMW), 1998 U.S. Dist. LEXIS 9251, 1998 WL 337884, at *1 (S.D.N.Y. June 25, 1998) (citing Leema Enterprises, Inc. v. Willi, 582 F. Supp. 255, 257 (S.D.N.Y. 1984)). Due to that complexity, it is particularly difficult to conclude in the context of personal jurisdiction that a plaintiff "crosse[d] the line from 'misunderstanding, bad judgment, or well-intentioned zeal,' to frivolousness and harassment." Olaf Sööt Design, LLC v. Daktronics, Inc., 325 F. Supp. 3d 456, 461 (S.D.N.Y. 2018) (citing Veneziano v. Long Island Pipe Fabrication & Supply Corp., 238 F. Supp. 2d 683, 694 (D.N.J. 2002)); see, e.g., Davey v. PK Benelux B.V., 20-cv-5726 (VB), 2022 U.S. Dist. LEXIS 78357, 2022 WL 1289341, at *4 (S.D.N.Y. April 29, 2022) (dismissing action for lack of personal jurisdiction after Plaintiff offered "no evidence that defendant's website operated to purposefully avail [itself] of the privilege of conducting activities within New York," but declining to sanction Plaintiff because there was no evidence of bad faith).

As I did in this case, the Plaintiff in *Mission 8* promptly withdrew its complaint after learning that the Defendants conduct no business in New York, indicating that the Plaintiff's jurisdictional allegations stemmed from a misunderstanding rather than harassment. Pl. Opp. at 5. For these reasons, even if the Plaintiff lacked any basis to assert personal Jurisdiction in New York, the Court would not infer bad faith in these circumstances.

Defendants have failed to meet the very high threshold of showing that Plaintiff's allegations were so unmeritorious as to require an inference of bad faith. Schlaifer Nance & Co., 194 F.3d at 336. "[A] claim that fails as a matter of law is not necessarily lacking *any* basis at all." Schlaifer Nance & Co. v. Estate of Warhol, 194 F.3d 323, 336 (2d Cir. 1999). Defendants argue that Plaintiff's jurisdictional allegations were meritless because Defendants, South Carolina, and Wyoming-based companies, "conduct *no business* out of the State of New York." Def. Br. at 6. However, Plaintiff did have some basis to believe, before filing its complaint, that Defendants did conduct business in New York. Defendants' website advertised that "(1) Defendants are 'a distributed team' with 'offices and teams all around the world'; (2) 523,000+ companies use Defendants' software, (3) Defendants have engaged in 622 million+ sales; and (4) Defendants have participated in 9.2 billion+ calls with potential clients." Richlin Decl., ¶ 5; Ex. E. Based on these claims, Plaintiff assumed that Defendants had New York-based customers. Id. Upon learning otherwise "for the first time in the motion to dismiss, Plaintiff voluntarily dismissed this action two weeks later." Pl.

---

cv-2219 (ADS) (SIL), 2016 U.S. Dist. LEXIS 83049, 2016 WL 3566217, at *9 (E.D.N.Y. June 25, 2016) (finding bad faith based on refusal to redact information after being notified of obligation to do so); Banus v. Citigroup Glob. Markets, Inc., 757 F. Supp. 2d 394, 400 (S.D.N.Y. 2010) (finding bad faith because the lawsuit "amounted to an attempt to use the judicial process for the quite improper purpose of simply stalling [movant's] effort to collect the money it is owed"); Amorosa v. Ernst & Young LLP, 03-cv-3902 (CM), 2010 U.S. Dist. LEXIS 4503, 2010 WL 245553, at *8 (S.D.N.Y. January 20, 2010) (finding bad faith based on an "intentional misstatement" to the Court); Neshewat v. Salem, 365 F. Supp. 2d 508, 528 (S.D.N.Y. 2005) (finding bad faith because Plaintiff was "intent on litigating the same issues over and over again" and had a "propensity for vexatious lawsuits"). *Dwelling Mgmt. v. Mission 8, LLC*, No. 23-CV-02593 (VEC) (SN), 2023 U.S. Dist. LEXIS 214227, at *6-7 (S.D.N.Y. December 1, 2023).





## T. A. Blackburn Law

Opp. at 5. Because there were some facts supporting Plaintiff's assertion of personal Jurisdiction, Plaintiff's jurisdictional allegations were not entirely meritless. *Dwelling Mgmt. v. Mission 8*, LLC, No. 23-CV-02593 (VEC) (SN), 2023 U.S. Dist. LEXIS 214227, at *8 (S.D.N.Y. December 1, 2023).

**Conclusion**:
During the March 5, 2024 hearing, the Defendant's counsel made several contradictory and demonstrably false statements on the record. At the beginning of the hearing, she claimed that her client would only agree to a Jams mediator with New York State Federal bench experience. Towards the end of the hearing, she contradicted herself. She said that she allowed Plaintiffs to pick "any Jams mediator" so long as they had federal bench experience. Well, the Plaintiff chose Judge James Ware and Judge Vanessa Gilmore. Both had immediate availability, were former Federal District Judges, and were inexplicably rejected by the Defendant's counsel.

As evidenced by the Plaintiff's sworn declaration, Defendant Fisher never met his kids and never traveled with them to or from New Jersey. This is another statement made on the record by the Defendant's counsel that was knowingly inaccurate.

In the end, I respectfully request that the Court refrain from imposing sanctions against this writer for mistakenly identifying Defendant Fisher's domicile as New York. If the Court is inclined to issue sanctions against this writer for this error, I ask that the Court be fair and balanced and issue sanctions to Defendant Fisher's counsel for the demonstrably false and contradictory statements she made on the record during the March 5th hearing.

Plaintiff thanks the Court for its time and consideration.

Respectfully submitted,

*Tyrone A. Blackburn, Esq.*
Tyrone A. Blackburn, Esq.

Cc: counsel of record via ECF.