```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   ALEKSANDAR ZUNZUROVSKI,

 4                  Plaintiff,

 5            v.                          23 CV 10881 (DLC)

 6   LAINE FISHER, et al.,

 7                  Defendants.           Conference
     ------------------------------x
 8                                        New York, N.Y.
                                          March 5, 2024
 9                                        11:00 a.m.

10   Before:

11                       HON. DENISE COTE,

12                                        District Judge

13                       APPEARANCES

14   TYRONE A. BLACKBURN
          Attorney for Plaintiff
15
     TRAUB LIEBERMAN STRAUS & SHREWSBERRY LLP
16        Attorneys for Defendants
     BY:  LISA L. SHREWSBERRY
17

18

19

20

21

22

23

24

25
```

1                    (Case called)

2                    MR. BLACKBURN:  Tyrone Blackburn for the plaintiff.

3                    THE COURT:  Let me advise counsel.  These microphones

4     require you to move the microphone close to you.  You can stand

5     up and move the microphone close to you.

6                    MR. BLACKBURN:  Does it extend?

7                    THE COURT:  Yes.  Just pull the whole thing close to

8     you.

9                    Mr. Whertvine will show you.

10                   MR. BLACKBURN:  Can you hear me?

11                   THE COURT:  Then you don't need to bend over.

12                   Mr. Whertvine, could you show him what to do.

13                   Mr. Blackburn, welcome.  You may be seated.

14                   MR. BLACKBURN:  Appreciate it.

15                   MS. SHREWSBERRY:  Good morning, your Honor, Lisa

16    Shrewsberry for the defendants from Trout Lieberman.

17                   THE COURT:  Thank you.  Welcome.

18                   Thank you, counsel, for being here on this order to

19    show cause as to why sanctions should be not be imposed on Mr.

20    Blackburn.

21                   Let me just set out a little bit of procedural history

22    here.  I think this lawsuit was filed in mid December, I think

23    December 14, and the plaintiff is a resident of New Jersey.  So

24    this was filed as a diversity action.  It named three

25    defendants, two individuals and a law firm and partnership.  It

1   brings two claims for legal malpractice and breach of contract.

2          Counsel for the parties have advised me that a call in

3   mid November, in their view, contained abusive and derogatory

4   information or comments against each other.

5          But also, in mid December, right after this lawsuit

6   was filed, I believe, and perhaps right before, counsel for the

7   defendants advised plaintiff's counsel that one of the

8   individual defendants lives in New Jersey and thus there was no

9   diversity jurisdiction.

10          The record will reflect the orders I have issued and

11   the scheduling that has gone on.  And, on February 9,

12   plaintiff's counsel voluntarily dismissed this action against

13   the individual defendant who, he was advised, resided in New

14   Jersey.

15          That doesn't solve the problem because the partnership

16   is not diverse either.  Obviously the residence of the

17   partnership is determined by the residence of the individual

18   partners.

19          I gave notice through my order that I was considering

20   a referral to the Second Circuit department disciplinary

21   committee for what I observed was a practice or pattern here.

22   My order described a number of cases that plaintiff's counsel

23   has filed that have been dismissed for lack of jurisdiction.

24          There was also the issue of whether plaintiff's

25   counsel was actually a member of this court, as he proclaims on

1   his letterhead.  He was not, but he has now apparently taken

2   steps to obtain membership before the bar of this court.  So

3   it's possible also that I can impose a sanction of a referral

4   to the Southern District of New York grievance committee if

5   that is warranted.

6          I should say as well there is an additional sanction

7   that I may impose under my inherent authority and potentially

8   also under Rule 11, and that is the defendants' attorneys'

9   fees.

10          Let me identify what I think are the two important

11   issues for us to address today, and I'm anxious to hear from

12   Mr. Blackburn about these issues and of course Ms. Shrewsberry,

13   if she has anything she wishes to add.

14          I am concerned that Mr. Blackburn does not conduct the

15   inquiry that is necessary under Rule 11 before he files a case

16   in federal court on the basis of diversity jurisdiction.  In

17   particular, it's not clear to me that he is abiding by the

18   requirements of Rule 11 to determine whether or not diversity

19   actually exists between the plaintiff and the defendants.

20          What he has provided to me in this case shows a

21   failure to conduct the Rule 11 inquiry to show sufficient

22   diligence to learn where the residence of each of the named

23   defendants is, but of course I'll give him an opportunity to be

24   heard.

25          But there is a second concern I have that's related,

1    which is, is there a basis to find that Mr. Blackburn is not

2    doing the necessary investigation under Rule 11 to determine

3    whether there is diversity jurisdiction but feeling that

4    ultimately it doesn't matter because he can just voluntarily

5    dismiss when the lack of diversity jurisdiction is pointed out.

6    And of course this would be abusive, abusive to the court

7    system, abusive to defendants.

8         Given the number of cases in which there has been a

9    dismissal for a lack of diversity jurisdiction, including

10   voluntary dismissals, I wonder if that is a concerning pattern

11   as well, and I look forward to hearing from Mr. Blackburn about

12   that.

13        Mr. Blackburn's letter to me described his familiarity

14   with the Second Circuit precedent that allows a voluntary

15   dismissal when there has not yet been an answer or a motion for

16   summary judgment.

17        Then let me mention a second thing that I think is

18   concerning.  Obviously, it's important that everyone in a

19   courtroom is treated with courtesy and respect, but it's also a

20   requirement for the practice of law in New York State, and I

21   expect every state, that counsel don't engage in abusive

22   behavior to each other outside the courtroom, and certainly

23   that accusations of bias, including racial bias, not be made

24   without a good-faith basis to make them.

25        Here, counsel have made accusations against each other

1    about things that were said or done in this litigation that

2    reflects a contentiousness and an accusation of bias and

3    improper conduct, which is unusual among or between counsel in

4    litigation before me, and I find concerning.  I'm not finding

5    who is in the right or in the wrong, but I want to make sure

6    that counsel are aware of their ethical obligations as members

7    of the bar to treat each other with courtesy and respect as

8    they diligently pursue the interests of their clients, even

9    when they are not in a courtroom, and even when their behavior

10   is not supervised by a judge.

11           Those are my two concerns, but why don't we address

12   them one at a time.

13           Mr. Blackburn, I would like to hear anything you have

14   to say to me on the first issue, which is the filing of a

15   diversity action in federal court without meeting your Rule 11

16   obligation to sufficiently investigate whether or not you know

17   where the residence of each of the defendants is.

18           Mr. Blackburn.

19           MR. BLACKBURN:  Good morning, your Honor.  Thank you

20   for that.

21           When I filed -- before I filed this lawsuit, I spoke

22   with my client.

23           THE COURT:  I'm sorry?

24           MR. BLACKBURN:  Before I filed this lawsuit, I spoke

25   with my client to inquire about his recollection as to the

1  locations that all of these defendants reside in, including the

2  law firm.  It was -- my client had informed me that the

3  residences were in New York.

4        I then went on LexisNexis.  I pay a premium every

5  month for this service that provides me with the ability to --

6  it's called people search and business search, and it provides

7  me with the ability to look up a name, date of birth, and

8  business name in order to determine the residence of

9  individuals.  It has not failed me up until this point.  So I

10 did that search and that's when I discovered the listed

11 residence of Ms. Fisher.

12       THE COURT:  What do you understand residence to mean?

13       MR. BLACKBURN:  Where someone lives.  That's -- I'm a

14 solo practitioner.  My listed address is my home.  So I didn't

15 think it was anything weird or anything farfetched that the

16 listed address here would be the same as the firm address.

17 That's how my stuff is.  I have a couple of friends that are

18 solos, same thing for them.  So it wasn't farfetched when I did

19 my search that I always do for all my cases and that's what

20 came up.  When I did the business search --

21       THE COURT:  Actually, the search that you sent me does

22 not, to me, indicate that this is the home address.

23       MR. BLACKBURN:  It says current residence right here,

24 your Honor.  It says -- from 3/2018 to current, it says current

25 residence, status current, and then it says address, and that's

1   what I used.  If you look at Exhibit A, attachment A, I should

2   say, under address summary, that's what it states there.

3          Granted, I learned my lesson now that I'll have to, I

4   guess, hire a private investigator or something to try to find

5   out more facts as to each person's address and domicile, but

6   this is what I was able to get from this public-record search

7   that I pay a lot of money for.

8          THE COURT:  Thank you for this attachment.  I'm

9   looking at attachment A.

10         Where does it say residence?

11         MR. BLACKBURN:  If you look at address, if you go down

12  in the middle of the paragraph, the middle of the page, it says

13  address and it has the address listed there.  If you look at

14  status, if you look at to and from, it says current residence

15  and it says --

16         THE COURT:  Excuse me one second.

17         MR. BLACKBURN:  The picture is black and white, if you

18  have a black-and-white copy.

19         THE COURT:  The court reporter has to be able to pick

20  up everything you say and everything I say.

21         Where do you want me to look to see the word

22  residence?

23         MR. BLACKBURN:  If you look at -- it says address

24  summary.  In that little box where it says address, 225

25  Broadway, I guess that's suite 750, New York, New York 10007.

1    If you go over to the box next, it says status and it goes

2    current.  And then you go to the next box, it says to and from:

3    3/2018 to current, and it says current residence.

4         It wasn't an intentional act to list her as a

5    defendant.  I could have filed this in state court very easily.

6    It was not my intention to have her here as a defendant if she

7    wasn't supposed to be in this court.

8         My client, I know, lives in New Jersey.  He told me

9    that, from what he knows, that they lived in New York.

10   Defendants' counsel says that they live -- that Ms. Fisher

11   lives in New Jersey.  She provided nothing to show that

12   Ms. Fisher lived in New Jersey --

13        THE COURT:  Mr. Blackburn.

14        MR. BLACKBURN:  I'm just explaining, your Honor, what

15   my thinking was.

16        I've had this happen to me multiple times before,

17   where an attorney has said to me that the client lives

18   someplace but they don't, and then I have to do my own

19   research, and then I have to go based off of the research that

20   I did.

21        I had a case before where an attorney told me that the

22   client was not there, and then I ended up spending a lot of

23   money in the process on a PI looking for this person, and it

24   was exactly the address that I had found, and I had gotten -- I

25   had lost one of the causes of action due to the statute of

1   limitations because I ran out of time.

2           I've been burned before by opposing counsel not being

3   truthful.  I am not saying that this opposing counsel is not

4   truthful, but I am just going based off my reputation as a

5   young lawyer and dealing with individuals who are more seasoned

6   than me who are trying to use different tricks to get me to

7   make mistakes.

8           I'm just saying -- I am speaking about my past

9   experience, your Honor.  I see your face.  I am just letting

10  you know.

11          THE COURT:  Yes.  I'm quizzical about this assertion

12  that more experienced lawyers are trying to take advantage of

13  you and trick you.  I expect that the way you should start with

14  an assumption of a member of the bar is that they are not

15  trying to trick you or take advantage of you.

16          MR. BLACKBURN:  I can give you some names.

17          THE COURT:  I'm not asking for names.

18          But, Mr. Blackburn, did you look at what 225 Broadway

19  is?

20          MR. BLACKBURN:  It's a building in Manhattan.  I never

21  lived in Manhattan.  I worked on Wall Street for a couple of

22  years, but I never lived in Manhattan.  All these buildings

23  have apartments in it.  I'm assuming that was just an apartment

24  in that building, your Honor.  I never went to the building.  I

25  never visited the premises.  I don't do that when looking up

1   residences.

2       THE COURT:  So you're not aware that many attorneys

3   have law offices in 225 Broadway?

4       MR. BLACKBURN:  No, I'm not.

5       THE COURT:  You have never had an adversary with a law

6   office in 225 Broadway?

7       MR. BLACKBURN:  Not to the best of my recollection.  I

8   do not know that.

9       THE COURT:  Mr. Blackburn, this is not an adequate

10  search with respect to the residence of the partners of the

11  partnership nor the individual defendants.

12      MR. BLACKBURN:  I accept that, your Honor now, now

13  that I know.  I fall on the sword and I accept that.  I did not

14  know that at the time, and I thought I did the best that I

15  could based off of a program that I pay for and based off of

16  conversations with my client.  I really don't know what else I

17  could have done other than to visit the premises, I guess, or

18  hired a private investigator or something to determine the

19  address prior to filing, but that's an expense that my client

20  would have had to incur.  I get what you are saying.  I have to

21  do better, and that's what I will do moving forward.

22      THE COURT:  The law with respect to diversity when you

23  are suing a partnership requires you to judge the states in

24  which the partnership resides by the residence of each of the

25  partners.  So voluntarily dismissing this lawsuit against one

1    individual defendant who is also a partner in the partnership

2    does not solve the problem.

3         MR. BLACKBURN:  I understand that now, your Honor.  I

4    will be more than happy to dismiss the entire complaint and

5    refile it in state court.  I would never intentionally try to

6    waste your time or your staff's time or even counsel's time.

7    The point is to resolve this issue that my client has and to

8    get it resolved quickly.  My intention is not to play

9    gamesmanship with courts to try to run up the bill or try to

10   waste time.  That's not my intention at all.

11        THE COURT:  When defense counsel told you that one of

12   the individual defendants resided in New Jersey, what did you

13   do?

14        MR. BLACKBURN:  I spoke to my client and I asked my

15   client if that was true.  He told me no, from the best of his

16   knowledge, it is not true.  And then the defense counsel did

17   not provide me with anything to show that her client actually

18   does reside in the State of New Jersey.  So I went back on

19   public records, and I searched again and that's what I came up

20   with.

21        THE COURT:  You did a public records search.

22        MR. BLACKBURN:  On LexisNexis, yes.

23        THE COURT:  You didn't do anything else.  Thank you.

24        MR. BLACKBURN:  Can I raise something else, your

25   Honor?

1          THE COURT:  On this topic, the diversity issue, and

2     the voluntary dismissal?

3          MR. BLACKBURN:  Yes.  I can talk about what I did to

4     search for the business.

5          I went to New York State Department of Corporations.

6     I do that for all the corporations that I file against, and I

7     look up the forum and the jurisdiction in every state that I

8     know them to have a business in.

9          And what I discovered for this entity was that its

10    jurisdiction is New York and that's what -- then that

11    corroborated with the public records search.  That's why I

12    thought erroneously that it was the same thing like how my firm

13    is, same thing how my four friends' firms are, which is their

14    firm address is their home address.  I didn't think nothing

15    beyond that.

16         THE COURT:  You have no reason to believe this is a

17    sole practitioner operating out of their home.  It's a

18    partnership.

19         MR. BLACKBURN:  I completely understand that.  I'm not

20    discounting that fact.  That's a key fact.  I can give you a

21    couple of other attorneys that I know that they work with other

22    attorneys as well and it is their home address.  It's not

23    saying that because a partnership has to be a former address of

24    where the parties live or where one of the parties live.  I

25    work with other attorneys and it's out of my home address as

14

1    well, so I have -- I can give you the names of three other

2    attorneys that I work with in cases out of my home address.

3         I get what you are saying, but it's not a situation,

4    again, that was intentional or malicious.

5         I just want to reiterate, I am not trying to waste the

6    Court's time or counsel's time or anyone's time.  I did my

7    search to the best of my ability.  This is what I found.  I

8    didn't see nothing else that conflicted.  It doesn't say that

9    it was a foreign corporation or anything like that.  It says

10   that the jurisdiction is in New York State.  I get what you are

11   saying, the partnerships, and I get what you are saying about

12   the different addresses.

13        But I just reiterate again, after receiving the email,

14   speaking to my clients, going back to public records, this is

15   what I found again.  I guess next time I am going to do more.

16        THE COURT:  You must to comply with Rule 11.  You

17   must.

18        MR. BLACKBURN:  I am going to do more.

19        THE COURT:  Your complaint describes the partnership

20   as a corporation, even though it's listed as an LLP in the

21   caption.

22        MR. BLACKBURN:  Yeah.

23        THE COURT:  Do you know the difference between a

24   corporation and a partnership?

25        MR. BLACKBURN:  A corporation is an incorp., I

1   believe, and a limited partnership is a partnership with more

2   than one individual.

3          THE COURT:  So they have different tests for diversity

4   jurisdiction.  Are you aware of that?

5          MR. BLACKBURN:  I'm aware now.  But I will make sure

6   that this never happens again, that's for sure.

7          THE COURT:  I listed in the order to show cause five

8   other actions filed by you in this district which were

9   dismissed for lack of jurisdiction or transferred or dismissed

10  for lack of venue, so this would be the sixth case in a series.

11         Do you want to address that?

12         MR. BLACKBURN:  I'll be very honest with you.  I'm now

13  seeing this.  I think the first one may be *Jones v. Fox*

14  *Rothschild*.  I believe in that case the Court believed that the

15  majority of the occurrences happened in the State of New Jersey

16  and not in the State of New York, even though part of it did

17  happen in New York.  I did have New York causes of action.  So

18  that case was transferred for that reason.

19         To be use it honest with you, I only know the first

20  one because that was the first case I ever filed in this court

21  through *pro hac*.  That was the first federal case I ever filed

22  in my life.  That's how that one sticks out to me.

23         The others, to be quite honest, I don't know how I

24  missed that part of the letter.

25         THE COURT:  It's an order.

1          MR. BLACKBURN:  The order.  I apologize.

2          But I'm pretty certain that those were other reasons

3     as well, probably because of the removal of certain causes of

4     action which killed diversity or which caused issues.  Parties

5     were added.  Parties were removed.  I don't have the answer to

6     that.  I don't have what the case titles are.

7          THE COURT:  Would you like an opportunity to refresh

8     your recollection with respect to these five cases.

9          MR. BLACKBURN:  For the remaining four.  I know

10    exactly what the first one is.  But the remaining four, I don't

11    know the names.

12         THE COURT:  Why don't we say two weeks from today you

13    can make a written submission explaining how you complied with

14    the requirements of Rule 11 with respect to each of these five

15    cases.

16         MR. BLACKBURN:  Sure.

17         THE COURT:  That will be March 19.

18         Let me give Ms. Shrewsberry an opportunity to speak

19    with respect to this issue of diversity before we move to the

20    second issue.

21         Ms. Shrewsberry, is there anything you wish to say?

22         MS. SHREWSBERRY:  I think that you have covered

23    everything.

24         The only thing that I would like to say is that

25    Mr. Zunzurovski, who is the plaintiff, and Laine Fisher, who is

1    the defendant that lives in New Jersey, live in towns next door

2    to each other, Tenafly and Glen Ridge.

3          The underlying matter in which Ms. Fisher represented

4    Mr. Zunzurovski, they commuted from New Jersey to Long Island

5    14 times for 14 hearings before arbitrator Scheinman on the

6    matter.  Their kids play sports against each other because the

7    towns are sports rivals.  It's inconceivable to me that Mr.

8    Zunzurovski didn't know that Ms. Fisher didn't reside in New

9    Jersey.

10         THE COURT:  Why don't we do this as well, Mr.

11   Blackburn, since you have represented to me that your client

12   represented to you that Ms. Fisher lives in New York.  Why

13   don't you give me an affidavit or declaration, sworn, by your

14   client in two weeks also with respect to that conversation with

15   you.

16         MR. BLACKBURN:  OK.

17         THE COURT:  Thank you.

18         Let's turn to the second issue, and that is the need

19   for counsel to address each other with courtesy and respect and

20   to be careful about making accusations of bias or abuse unless

21   there is a sufficient basis to make such accusations.

22         Mr. Blackburn.

23         MR. BLACKBURN:  Your Honor, thank you again for the

24   ability to address that issue.

25         As I indicated in my letter to your Honor in response

1    to defendant counsel's letter, I had no intentions of filing

2    this lawsuit against Ms. Fisher and her colleague and the law

3    firm.  I had attempted to reach out to them multiple times to

4    try to resolve the claims that my clients had against them, and

5    all of my attempts were ignored.

6            I knew the sensitive nature of my client's claim, and

7    I know the evidence that he has to substantiate a lot of the

8    sensitive issues that were raised in my complaint regarding

9    these defendants.  I sent them several emails.  And in the

10   final email that I sent, defendants' counsel responded and we

11   had a call.

12           When I started the call, I literally said to her, you

13   know, I have no intentions of filing this.  My goal is not to

14   hurt your client or to hurt your reputation or anything like

15   that, because you're an attorney getting sued for malpractice.

16   It is bad if you have that on the docket anywhere.  And I

17   said -- I started going through some of the issues.

18           Then I got to the issue of the claim that my client

19   has that her client was engaging in something with the opposing

20   counsel for some other defendants, and she just started yelling

21   and screaming at me and telling me to shut up and to stop

22   talking and to be quiet and all these different things.

23           That just set this entire dialogue off to a really,

24   really bad start.  I had to inform her that she would not talk

25   to me that way.  I was not an associate in her firm.  I do not

1     work for her.  She will not disrespect me.  Then I hung up the

2     phone, which I would apologize for, and I apologize to the

3     Court for that as well.

4           She sent me several emails attempting to figure out a

5     way to resolve this, which admittedly I was very upset, so I

6     did not respond to them immediately, which, again, I apologize

7     for that.

8           But I take responsibility for my own actions and how I

9     reacted.  I should have kept my cool and not allowed myself to

10    lose my temper and hang up the phone and to ignore her emails

11    that she sent me after the fact.  I apologize to her as well.

12          THE COURT:  You made accusations against counsel in

13    letters to me.

14          MR. BLACKBURN:  I will respond to that too.

15          After that, my client finally told me, listen, you

16    should respond to her and see if we can resolve this through

17    mediation.  I said OK.  I gave her several mediators, Ralph

18    Charles I think is one, and there is a bunch of others that I

19    listed, and she refused all of them.  All right.

20          So then she recommended some mediators who were

21    magistrate judges, former magistrates from JAMS.  My client

22    rejected those, and we selected several New York State

23    appellate court judges as well as former retired U.S. District

24    Judges.

25          My client wanted a person of color, a minority, to be

1    the mediator, and after several rounds, defendants' counsel

2    rejects every single mediator that we selected and then

3    proceeded to put this parameter that because of the nature of

4    the claims in this case, it would only be suitable for a

5    retired federal judge from the State of New York from JAMS.

6          If you go on JAMS and you look up all the judges that

7    are federal judges that are retired, they are all older

8    Caucasian males, and I said to her, I said:  I don't want to

9    suspect anything nefarious here, but there is a pattern here.

10   Every person of color that we present you reject, and you have

11   now a limited malpractice case which goes before either the

12   First Department or the Second Department in the State of New

13   York, and you said that case has to be decided by a retired

14   federal judge because that's the court that would be most

15   suitable to hear it, which to me makes absolutely no sense when

16   you have two appellate judges who dealt with malpractice issues

17   that are available, and I gave her --

18          THE COURT:  I take it you mean former judges.

19          MR. BLACKBURN:  Yes.  Former appellate judges who had

20   a ton of availability.  We could have resolved this case in

21   December, we could have resolved this case before Christmas,

22   because they had availability up until that point, and it was

23   all rejected based on this rule that came three rejections

24   later that it has to be a federal judge from New York from JAMS

25   that are retired -- that is retired.  If you look at JAMS, no

1   diversity.  That was the problem.

2           Then I said to her, I said, I really feel like your

3   rejection of these judges has nothing to do with their

4   qualifications but has something to do with something else.

5   It's not something that I like to think or like to claim, but

6   it's pretty obvious that if you do a search, there is no person

7   of color from the State of New York in JAMS, not one that was a

8   federal judge, and I made a request -- but there are several

9   appellate judges from the state court who dealt with

10  malpractice, and she rejected them all.

11          THE COURT:  I take it you're, again, referring to

12  former judges.

13          MR. BLACKBURN:  Former judges, yes.  I apologize.

14          THE COURT:  Ms. Shrewsberry.

15          MS. SHREWSBERRY:  Thank you, your Honor.

16          I'll start with the first conversation.  It wasn't

17  anything as described here today.  It was a threat to

18  embarrass, to publicly humiliate Laine Fisher by filing on the

19  public docket an accusation that she had an affair with

20  opposing counsel.  And I immediately said, that's not true.

21          The reason my client didn't respond to the letters

22  until it got to me was because, A, they were dealing with their

23  insurance carrier, but, B, they didn't know what to say.  It

24  wasn't true.  I said:  That's just not true.  If you have a

25  legal malpractice claim, that's what I do all day long, tell me

1    what that is.  But if you're talking about these salacious

2    allegations, we have to get past that.  It's just not true.

3           The language that was used in that conversation I will

4    not repeat today.  The letter I sent to you on February 9, I've

5    been practicing law for 36 years.  I have never put that

6    language in a letter to any court, let alone a federal judge.

7    When it was in draft, I walked around my office showing people,

8    is this OK, but I wanted your Honor to understand -- and this

9    is the tip of the iceberg.

10          Every email I have received from Mr. Blackburn is

11   threatening.  Every email -- basically, he hung up on me.  I

12   did not raise my voice.  I did not yell at him.  What I was

13   trying to do was to eliminate the risk that this lie would

14   become public.  My client has a family.  There is another

15   person involved who is actually -- he has put the other man's

16   picture in his complaint who is not even a party to the action,

17   and it's not true.  This man is furious.  He has children and a

18   wife.  And on the federal docket there is a picture of him

19   right here saying that he had an affair with opposing counsel

20   during a lawsuit.  It's outrageous.  I don't even know what to

21   say.

22          I'm still speaking.  Thank you.

23          I never spoke to him again on the telephone because it

24   was not productive.  My goal was to get him in front of someone

25   with some gravitas to explain to him why he couldn't do this.

1    It just wasn't true.

2          If he had a legal malpractice claim, I sent him an

3    email.  My job is to evaluate liability.  If there is a legal

4    malpractice claim, most legal malpractice claims don't see the

5    light of day.  We will resolve it.  Tell me what the issue is

6    and let me understand what happened.  His issue was this

7    impropriety that he just wouldn't believe that it didn't

8    happen.

9          I report to my client, and I report to an insurance

10   carrier.  The New York guidelines say that if the underlying

11   case in a legal malpractice case is a wage-and-hour case, which

12   is federal law, then they want to go to JAMS because JAMS has

13   the most success rate for mediation, and they want someone who

14   had federal bench experience, whether it was a former federal

15   judge or a former federal magistrate.  That was it, wide open,

16   you pick.  There is a wide variety of people.

17         It got more and more hostile.  He told me that he

18   looked at my website.  I was clearly a racist.  He called me a

19   disgusting racist.  I actually have biracial children in my

20   family.  There is nothing more -- our firm is diverse.  We take

21   that very, very seriously.  It's very upsetting to hear that.

22         And then shortly thereafter, he filed the complaint.

23   There was no talking to him about the diversity.  The reason he

24   filed in federal court is because it gets picked up by Law360.

25   That's what he said.  Your client is going to read about

1    herself all over the press, and she is going to be humiliated,

2    and he did it.

3        And now we have this complaint.  It has her picture

4    and this poor man's picture, who is not even involved in this,

5    on the federal docket.

6        I heard him say today that he is going to voluntarily

7    dismiss the entire lawsuit.  I'd be happy if that happened, and

8    we will deal with this in state court.  But it's outrageous

9    that he would describe the events in the way he did, because

10   that's not at all what happened.  Thank you.

11       MR. BLACKBURN:  Your Honor, could I respond to some

12   stuff that counsel said?

13       For starters, I gave her two district judges, one from

14   Texas and one from California, who both had availability,

15   former federal judges, district court judges.  So if it's true,

16   what she is saying, that for the labor claims that her carrier

17   required a federal judge, a retired federal judge, there were

18   two with availability in December and January to mediate this

19   case that I provided the names of who are minorities.  That's

20   the first thing.

21       Second thing, my client has text messages from

22   Ms. Fisher where she is detailing, I believe, conversations and

23   dinners and different things that she was having with the

24   individual named in the complaint, and it was Ms. Fisher who

25   said, I can have this in the affidavit as well if you want,

1   that she was engaged in a relationship with that man.  It

2   wasn't my client that made that up out of thin air.

3          She actually gave my client alcohol from this man that

4   he gifted to her when he came to her office after the

5   arbitrator had ruled against him.  And as he is drinking it,

6   she says to him:  You wouldn't believe who gave me that.  And

7   then she is like:  Who?  And then she proceeds to say the

8   individual who is named in the complaint who was the attorney

9   of the defendants who came out against my client.

10         In addition to that -- which is why I was trying to

11  avoid filing the lawsuit that as I said to counsel, that my

12  client said these things.  He has these text messages.  He also

13  was in her office when she said this to him, and she also knew

14  that what she was doing was wrong because she said to him she

15  would hate to have her cocounsel, Mr. Tannenbaum, learn of

16  this.  That's what she said to him, and he will put that in an

17  affidavit, if you need that, verbatim what she said to him.

18  And we will attach all the text messages and communications if

19  you want that as well.

20         I have no reason to lie.  Like I said before, I have

21  no intention of filing this.  This is not my goal.  My goal was

22  not to file this lawsuit.  I was trying to resolve this

23  amicably and privately, but --

24         MS. SHREWSBERRY:  May I just say one thing, your

25  Honor.  I would be remiss if I didn't say -- I read all of the

1   text messages.  They are completely innocuous.  It's just not

2   true.  It didn't happen.  I understand he feels he has to say

3   that today, but it's not true.

4           That's all I can say right now.

5           MR. BLACKBURN:  Your Honor, we all have clients.  Our

6   client says things.  Her client said something to her.  My

7   client said something to me.  If there wasn't a contention

8   between the parties, we would not be here.  If everyone saw eye

9   to eye, we would not be here.  My client knows what was said to

10  him, where it was said, when it was said, and he could even

11  tell you what she was wearing the day that she said it.  I get

12  it if her client denies it, that's fine, but my client stands

13  by his position.

14          THE COURT:  I am going to reflect on what to do here,

15  Mr. Blackburn.

16          You have further submissions to make to me with

17  respect to the other five cases that were listed in my order to

18  show cause in two weeks.  You have a further submission to make

19  to me of an affidavit from the plaintiff confirming that he

20  told you that Ms. Fisher lived in New York.

21          I find this very disturbing.

22          I want to remind you, Mr. Blackburn, that I will

23  continue to reflect on whether sanctions are appropriate and,

24  if they are, which sanctions to impose, including referrals to

25  the Southern District grievance committee, the Second

1    Department disciplinary committee, and the imposition of

2    attorneys' fees.  I have not decided what I am going to do.  I

3    am going to wait for your submission.

4            It's important to represent one's clients zealously.

5    Attorneys have an obligation, once they are admitted to the bar

6    of this state and of this court, to conduct themselves in

7    compliance with rules of behavior.  It is disturbing to hear

8    the things I am just hearing today.

9            Thank you, counsel.

10           MS. SHREWSBERRY:  Your Honor, I'm sorry.  We have not

11   answered the complaint.  It is actually still pending.  Could

12   we address that?

13           THE COURT:  Yes.

14           I have jurisdiction with respect to the imposition of

15   sanctions once a case has been filed against another party and

16   filed in federal court.  So plaintiff's counsel has represented

17   that the plaintiff will consent to dismissal of the entire

18   action.  I'll keep jurisdiction over the sanctions motion.

19   I'll get an order out dismissing the complaint.  The defendants

20   have no duty to answer or respond.

21           MS. SHREWSBERRY:  Thank you, your Honor.

22           (Adjourned)

23

24

25